UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

HERIBERTO J. MARTINEZ,

      Petitioner,

v.                                        Case No: 5:19-cv-335-TPB-PRL

WARDEN, FCC COLEMAN –
LOW,

      Respondent.

_____

**ORDER OF DISMISSAL WITHOUT PREJUDICE**

Petitioner initiated this civil action by filing a Petition for Writ of

Habeas Corpus Under 28 U.S.C. § 2241. Doc. 1. Petitioner challenges the loss

of 41 days of good conduct time following prison disciplinary proceedings, in

which officials found Petitioner guilty of possession of a hazardous tool

(cellphone). *See generally id.* Respondent filed a Response (Doc. 6; Response),

with 6 exhibits (Doc. 6-1; Resp. Exs 1-6). Respondent argues that the Petition

should be dismissed, because (a) Petitioner failed to exhaust his

administrative remedies; and (b) his due process claim lacks merit. *See*

*generally* Doc. 6. Petitioner had a chance to reply (Doc. 4 at 3), and he failed

to do so. Thus, this case is ripe for review.

## I.    Background

When Petitioner initiated this case, he was incarcerated at the Federal Correctional Complex in Coleman, Florida (FCC Coleman), which is within the jurisdiction of the Middle District of Florida. *See* Doc. 1 at 1. Petitioner remains confined at FCC Coleman, serving a 120-month term of incarceration for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine. Resp. Ex. 1 at 4. The Federal Bureau of Prisons (BOP) calculates that Petitioner's current release date is August 15, 2024. *See* Find an inmate, Federal Bureau of Prisons, available at www.bop.gov/inmateloc/ (last visited Apr. 20, 2022).

The claims raised in the Petition stem from a 2017 incident that occurred when Petitioner was housed at FPC Pensacola. In April 2017, prison staff found a cellphone at an off-base detail work site. Resp. Ex. 2 at 7. During a review of the cellphone's forensic report and call history, staff discovered that one of the saved contacts in the phone had the same name as Petitioner's spouse. *Id.* On May 1, 2017, staff issued and delivered to Petitioner Incident Report # 2981735, charging Petitioner with violating Bureau Code 108, possession, manufacture, or introduction of a hazardous tool. *Id.*

BOP Lieutenant D. Robbins was assigned to conduct the initial investigation of the charges and interview Petitioner. *Id.* During his

investigation, Lieutenant Robbins advised Petitioner of his rights and asked him if he wanted to make a statement about the incident. *Id.* at 8. According to the Incident Report, Petitioner declined to make a statement to Lieutenant Robbins. *Id.* Ultimately, Lieutenant Robbins determined the charges against Petitioner were well-founded and referred the matter to the Unit Discipline Committee (UDC) for further action. *Id.* UDC staff member Liles reviewed the matter and conducted a hearing on May 2, 2017. *Id.* at 7. At the UDC hearing, Petitioner stated, "It was my phone." *Id.* After considering the "[i]nmate's admission, [b]ody of the Incident Report, [and] chain of custody," the UDC referred the matter to the Discipline Hearing Officer (DHO) for a formal hearing. *Id.*

On May 2, 2017, Liles gave Petitioner notice of the formal discipline hearing, and at that time, Petitioner advised Liles that he declined a staff representative and would not be calling any witnesses at the formal discipline hearing. Resp. Ex. 3 at 15. Petitioner also advised Liles that he would be waiving his right to appear at the formal discipline hearing. *Id.* at 16. That same day, Petitioner signed an Inmate Rights at Discipline Hearing form, acknowledging that he was advised of the rights afforded to him at a formal discipline hearing and he was electing to waive his right to receive notice 24 hours before the discipline hearing would take place. Resp. Ex. 4 at 18-19.

Eight days later, on May 10, 2017, DHO Duane P. Donovan conducted

a discipline hearing. Resp. Ex. 5 at 21. Petitioner did not appear at the

hearing. *Id.* Following a review of the evidence – including Petitioner's

admission of guilt to the UDC, the photos of the cellphone, the cellphone

contact list and Petitioner's listed TRULINCS contacts, as well as the

Incident Report # 2981735 – the DHO found the greater weight of the

evidence showed Petitioner committed the prohibited act. *Id.* at 22. The DHO

sanctioned Petitioner with 41 days of disallowed good conduct time, 41 days

of disciplinary segregation, and 8 months loss of commissary privileges. *Id.*

The DHO report was completed on May 11, 2017. *Id.*

## II.     The Petition

Petitioner raises one claim for relief in the Petition.[1] *See generally* Doc.

1. Petitioner argues that the "DHO findings did not rest on constitutionally

adequate evidence," violating Petitioner's due process rights. *Id.* at 6, 10. In

support of this claim, Petitioner alleges that inmate Carlos Hudson was the

inmate who was in possession of the cellphone in May 2017, and that

Petitioner and three other inmates (J. Coochman, J. Ponce, and Arturo

---

[1] Although the Petition contains two grounds for relief, the allegations in "Ground Two" only involve Petitioner's efforts to exhaust his administrative remedies for the due process claim that he raises in "Ground One" of the Petition. *See generally* Doc. 1. As such, the Court construes the Petition as raising a single due process claim and considers Petitioner's exhaustion allegations only when analyzing Respondent's exhaustion argument.

Martinez) were all issued incident reports charging them with possession of

the cellphone. *Id.* at 10. According to Petitioner, inmate Hudson issued a

signed affidavit fully exonerating the other charged inmates, including

Petitioner. *Id.* Petitioner asserts that at the other inmates' DHO hearings,

inmates J. Coochman, J. Ponce, and Arturo Martinez were found "not-guilty"

because of Hudson's affidavit, but "due to [Petitioner's] inability to speak

English, his UDC report was misinformed" and Petitioner was found guilty

based on "mere accusations," rather than "indisputable forensic evidence." *Id.*

Petitioner also argues that officials fabricated evidence that the cellphone's

call history contained the name of Petitioner's spouse. *Id.*

### III.   Discussion

An inmate must exhaust available administrative remedies before

seeking relief in a § 2241 proceeding. *See Santiago-Lugo v. Warden*, 785 F.3d

467, 474-75 (11th Cir. 2015). In examining the exhaustion issue, courts

employ a two-step process.

> First, district courts look to the factual
> allegations in the motion to dismiss and those in the
> prisoner's response and accept the prisoner's view of
> the facts as true. The court should dismiss if the
> facts as stated by the prisoner show a failure to
> exhaust.  Second, if dismissal is not warranted on
> the prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact, and
> should dismiss if, based on those findings,
> defendants have shown a failure to exhaust.

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015)

(citing *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008)); *see also*

*Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 855 (11th Cir. 2020)

(applying *Turner* to exhaustion analysis for § 2241 petition). To satisfy the

administrative exhaustion requirement, the inmate must use "all steps" that

the prison makes available to the inmate, and the inmate must do so

"properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate

must comply with the prison's deadlines and other procedural rules,

including the rules relating to the filing of appeals. *See id.*; *Bryant v. Rich*,

530 F.3d 1368, 1378 (11th Cir. 2008). If an inmate fails to exhaust his

administrative remedies and the respondent raises the issue in the district

court, the district court may not grant relief on the inmate's petition. *See*

*Santiago-Lugo*, 785 F.3d at 475.

The BOP provides a multi-tiered administrative grievance procedure

for inmates. See 28 C.F.R. § 542.10(b). Those rules state that if an inmate is

not satisfied with the result of his DHO hearing, he may submit an appeal to

the Regional Director (regional level appeal) within 20 calendar days. 28

C.F.R. §§ 542.14(d)(2), 542.15(a). If the inmate is dissatisfied with the

Regional Director's response to his appeal, he may submit a Central Office

Administrative Remedy Appeal to the General Counsel (central level appeal)

within 30 calendar days of the date the Regional Director signed the

response. *Id.* The central level appeal is the final step of the administrative process. *See id.* Completion of both steps is generally required to satisfy the exhaustion requirement.

Also, "[i]f the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by . . . 30 days at the regional level, or 20 days at the Central Office level." 28 C.F.R. § 542.18. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* At either level, the coordinator may reject and return a grievance that does not meet any of the procedural requirements. 28 C.F.R. § 542.17. The inmate must be provided with written notice of the reason for rejection. If the defect is correctable, the inmate must be given a reasonable extension of time to correct the deficiency. *Id.*

Although an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In *Ross v. Blake*, the Court identified three circumstances in which an administrative remedy would be considered "not available." 136 S. Ct. at 1862. First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Respondent argues that Petitioner failed to exhaust his administrative remedies because all his regional level and central level grievances were returned either without action for failure to comply with procedural rules or as untimely filed. Doc. 6 at 3-6. In support of its argument, Respondent provides a printout of the BOP's computerized administrative remedy records listing all administrative requests (regional and central) that Petitioner filed appealing the DHO hearing and incident report # 2981735. *See* Resp. Ex. 6 at 29-31. Respondent also provides the Declaration and Certification of Records by Jeanie Register, a legal assistant at FCC Coleman. *Id.* at 24-26.

Petitioner appears to argue that he attempted to exhaust his administrative remedies, but such remedies were unavailable because prison officials repeatedly hindered his attempts to follow the administrative process. Doc. 1 at 9. He alleges that he filed a regional level appeal and when

he did not receive a response, he asked Counselor Brye on July 31, 2017, while housed at USP Atlanta, about the status of the request, and Counselor Brye "mockingly destroyed the cop-out" in front of Petitioner. *Id.* Petitioner contends that in August 2017, after being transferred to FCC Coleman, Petitioner asked Counselor Thompson about the status of his regional level appeal and Thompson advised that the regional office requested an extension of time. *Id.* Petitioner asserts he then returned to Thompson in September 2017 and Thompson advised "there was no information in the computer." *Id.* According to Petitioner, in October 2017, Thompson finally advised him that the regional level appeal was denied "months before" and that it was too late for Petitioner to appeal to the central level office. *Id.* In support of his argument, Petitioner attaches to his Petition several administrative grievances and responses thereto. *See* Doc. 1 at 24-46. Petitioner asserts that other prison officials confirmed Petitioner's regional level appeal had been denied, but Petitioner never received a copy of the denial, rendering his administrative remedies unavailable. *Id.* at 9.

Accepting Petitioner's view of the facts as true, the Court finds that dismissal of his claim for lack of exhaustion is not warranted at the first step of *Turner*. *See Jackson v. Griffin*, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are question of fact that can bar dismissal at *Turner*'s first step). Thus, the Court proceeds

to the second step of the two-part process where the Court considers

Respondent's arguments about exhaustion and makes findings of fact.

In resolving the disputed facts at issues, the Court summarizes the

relevant evidence. The DHO report was issued on May 11, 2017. Resp. Ex. 5

at 22. As such, Petitioner had until May 31, 2017, to submit a regional level

appeal challenging Incident Report # 2981735. The evidentiary records show

that the regional office received on May 25, 2017, Petitioner's regional level

appeal # 903135-R1. *See* Resp. Ex. 6 at 29; *see also* Doc. 1 at 25. But on the

same day of receipt, the regional office rejected and returned the grievance,

explaining that all pages of the grievance must be legible and warning

Petitioner to not submit photocopies of the form. Doc. 1 at 24; Resp. Ex. 6 at

29. The regional office advised that Petitioner may resubmit his regional

level appeal "in proper form within 10 days of the date of [the] rejection

notice." Doc. 1 at 24. As such, Petitioner had until June 5, 2017, to resubmit a

legible regional level appeal to the regional office.

Petitioner sent regional level appeal # 910227-R1 to the regional office

on July 17, 2017, Doc. 1 at 27, with the regional office receiving the appeal on

July 26, 2017, Resp. Ex. 6 at 29. On July 27, 2017, the regional office rejected

appeal # 910227-R1 as untimely filed. *Id.* at 25, 29. The evidentiary

documents show that over a year later, on July 30, 2018, the central level

office received Petitioner's central level appeal # 910227-A1 challenging the

regional office's July 27, 2017, rejection. Doc. 1 at 31, Resp. Ex. 6 at 30. On

August 20, 2018, the central office rejected and returned appeal # 910227-A1,

explaining the office "concur[red] with rationale of regional office and/or

institution for rejection," and advised that "[i]f staff provide[s] a memo

stating late filing was not [Petitioner's] fault, then resubmit to the level of the

original rejection." Doc. 1 at 29.

On November 2, 2018, the regional office received Petitioner's regional

level appeal # 903135-R2 again challenging the DHO report and alleging that

he was notified on September 19, 2017, about the regional office's return of

his May 25, 2017, regional level appeal, and asking that his untimely appeal

proceed. Doc. 1 at 38. Petitioner attached to the grievance a memorandum,

dated October 11, 2018, from FCC Coleman Counselor T. Thompson, stating:

"To whom it may concern: please allow the inmate to refile as this inmate has

actively been checking on responses and attempting to meet his timeframes."

Doc. 1 at 38-42. On December 12, 2018, the regional office rejected and

returned the appeal # 903135-R2, finding the grievance untimely filed. Doc. 1

at 35; Resp. Ex. 6 at 30. On January 28, 2019, the central office received

Petitioner's central level appeal # 903135-A1. Resp. Ex. 6 at 31. The central

office rejected the grievance as untimely on February 15, 2019, and again

noted that if a staff member provided a memo stating the late filing was not

Petitioner's fault, he could resubmit his appeal to the level of the original

rejection. *Id.* The record shows that on April 12, 2019, the central office

received Petitioner's central level appeal # 903135-A2. *Id.* The central office

rejected and returned the appeal on May 8, 2019, explaining the office

concurred with the rationale of the regional office and advised that

"[Thompson's] memo does not explain delay. Remedy 910227-R1 was rejected

on 07/27/17; your next filing was not until 07/30/201[8], over one year later."[2]

Doc. 1 at 43; Resp. Ex. 6 at 31.

Resolving the disputed facts, the Court finds that Petitioner did not

complete the administrative grievance process in accordance with applicable

procedures set forth in 28 C.F.R. §§ 542.14(d)(2), 542.15(a). Although

Petitioner filed several grievances at both the regional and central levels, all

the grievances were returned without action. Assuming Petitioner's first

regional level appeal # 903135-R1 received on May 25, 2017, was timely filed,

the regional office rejected that appeal because it was illegible, giving

Petitioner 10 days to resubmit his appeal. The regional office did not receive

Petitioner's next regional level appeal # 910227-R1 until July 26, 2017, which

explains why the regional office returned the appeal as untimely filed on July

27, 2017.

---

[2] In the response, the central office erroneously stated Petitioner's next grievance
was filed in "2019," but the evidentiary records clarify, and Respondent agrees, that the
correct year is "2018." Doc. 1 at 31; Resp. Ex. 6 at 30.

Petitioner appears to argue he never received notice of the regional office's return of appeal # 910227-R1. He asserts he asked about the status of his regional level appeals on July 31, 2017, but prison officials at USP Atlanta refused to give him information. He also asserts that after being transferred to FCC Coleman in August 2017, prison officials misinformed him that the regional office requested an extension of the response deadline, and then in September 2017, officials advised him that they could not find any information about the appeal. He argues he did not find out about the regional level denial until October 2017, rendering the administrative remedies process unavailable. Doc. 1 at 9.

Nevertheless, although the regional office rejected regional level appeal # 910227-R1 as untimely filed, Petitioner was still required to "properly take each step within the administrative process." Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) (citations omitted). Indeed, Petitioner does not explain how the untimely nature of the regional level appeal, or his late notice of the decision, hindered his ability to diligently file a central level appeal to complete the grievance process upon learning of the regional level denial in October 2017. Instead, Petitioner essentially argues that the regional office's return of his appeal as untimely relieved him of his requirement to file a central level appeal afterward. Petitioner is mistaken. Section 542.15(a) provides that if the inmate is dissatisfied with the regional office's response

to his appeal, he may submit a central level appeal within 30 calendar days. *See* 28 C.F.R. § 542.15(a). This provision allowed Petitioner to appeal the regional office's unsatisfactory response that his grievance was untimely, and he had to do so to properly exhaust his administrative remedies. *See Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (holding that a prisoner who declined to appeal an untimely grievance failed to exhaust his administrative remedies); *see, e.g., Tucker v. Jones*, No. 2:17-cv-133, 2018 WL 3557462, *6 (S.D. Ga. July 24, 2018) (finding that the Regional Director's finding that the plaintiff's BP-10 filing was untimely did not relieve the plaintiff of his requirement to file an appeal to the Central Office), *report and recommendation adopted*, No. 2:17-cv-133, 2018 WL 4688721, at *1 (S.D. Ga. Sept. 28, 2018). Although the record evidence shows that Petitioner did later file a central level appeal, he did not file a central level appeal until eight months after he allegedly learned of the regional office's denial in October 2017; and likewise, the central office rejected that appeal as untimely filed.

Thus, the Court finds that Petitioner failed to exhaust his available administrative remedies. Even assuming prison officials hindered Petitioner's initial status requests and did not timely inform him of the regional office's decision, Petitioner admits he learned of the regional office's rejection in October 2017. But rather than promptly filing his central level appeal to complete the process, he waited eight months to pursue his final

administrative remedy. Petitioner did not properly complete the process, and neither Petitioner's allegations nor the record show that those administrative remedies were unavailable so as to relieve Petitioner of the obligation to exhaust. As such, the Court finds that Petitioner failed to exhaust his administrative remedies as to his due process claim.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

2.      The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** in Tampa, Florida, this 22nd day of June, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

Jax-7
C:    Heriberto J. Martinez, #59468-004
      Counsel of record

---

[3] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.